UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM FERTIK individually
and as Administrator of the Estate of GRETA FERTIK,
    Plaintiff,

        v.                                CIVIL ACTION NO. 12-10795-PBS

WILLIAM STEVENSON, M.D.,
MELANIE MAYTIN, M.D.,
ABBOTT LABORATORIES, INC., and
ABBOTT VASCULAR, INC.
        Defendants.

MEMORANDUM AND ORDER ON
PLAINTIFF'S RULE 37(c)(1) MOTION FOR SANCTIONS AGAINST
DEFENDANTS ABBOTT LABORATORIES, INC. AND ABBOTT
VASCULAR, INC. (#98).

KELLEY, U.S.M.J.

I. Introduction

This is a medical malpractice and product liability action.  In May, 2009,

Plaintiff William Fertik underwent a cardiac ablation procedure performed by Drs.

Stevenson and Maytin at Brigham & Women's Hospital.  During the procedure, a

metal guide wire manufactured and marketed by Abbott Laboratories and Abbott

Vascular (referred to collectively as "Abbott")[1] failed and a portion of the wire about

15" long was left in his chest and was not discovered until four days later.  Mr. Fertik

---

[1] Inexplicably, the piece of wire removed from Mr. Fertik's chest was destroyed at the hospital.  (See #1 at 15-16.)

asserts that he suffered a series of strokes and neurological injuries caused by the remnant of guide wire before it was removed.

In the present dispute, Plaintiff contends that Abbott has not provided Plaintiff with discovery relating to the design and manufacturing specifications of the product. Plaintiff filed this motion for sanctions against Abbott on August 13, 2015.  (#98.) Abbott responded on August 27, 2015.  ( #104.)  The motion was referred to this Court on August 31.   Plaintiff filed a reply on September 8 ( #113) and Defendant filed a sur-reply on September 18. ( #123.)  The Court set a hearing for September 25, but the parties requested that the date be continued to October 2.  On October 2 the parties appeared for oral argument and Plaintiff filed an additional memorandum. (#133.)  On October 5 Abbott filed a post-hearing memorandum. ( #135.)

After considering the parties' submissions, their presentations at oral argument, and relevant case law, the Court finds that Plaintiff should be permitted to receive additional discovery and the parties should then produce new expert reports.  The case is set for trial on November 12, 2015.   The trial date will necessarily be suspended and the parties will follow the schedule as set out in the conclusion, below.

II.  Background

In May, 2012, Plaintiff filed a complaint in which he identified the wire used in the procedure as "the Abbott Vascular Devices Hi Torque BHW Wire, Model

2

1000463H" and alleged that the wire was defective.  (#1 at 2, 5, 10, 17-19.)  On October 1, 2012, Abbott filed its Rule 26 disclosures.  In spite of the fact that Plaintiff had identified the wire by name and model number, Abbott took the position that it did not know what wire had been used, but promised "product lot and manufacturing records, FDA records, testing records and other records relating to the claims and the incident..." ( #30 at 5.)   Abbott did not ever supplement its Rule 26 disclosures.  (#99 at 4.)

Discovery between the parties continued.  Without going into every one of Plaintiff's requests and Abbott's responses, suffice it to say that Plaintiff made very general requests, Abbott minimally, one might say, inadequately,  responded to them, and Plaintiff failed to follow up with additional requests.[2]  For example, Plaintiff requested "all documents and communications concerning the guidewire" (#99 at 4), and Abbott  responded that the request was too broad, unduly burdensome, etc., but that it would provide "documents relating to its investigation of plaintiff's product use."  (*Id*. at 5.)  Obviously, this response was not sufficient.  Plaintiff did not object or request  additional discovery.

According to Plaintiff, Abbott produced only 124 pages of discovery in its

---

[2]For a detailed description of specific requests and answers, *see* #99, Plaintiff's memorandum, at 4-9 and exhibits referenced there.

initial production in January 2013, and later produced 436 pages in response to Plaintiff's second requests for production. (#99 at 15.)  Abbott asserts that it produced discovery in January 2013 and again in February 2015.  *(See* #104 at 4.)   It is uncontested that at the time materials were produced, Plaintiff did not raise any objections.

On June 19, 2015, in accordance with the schedule set by the District Court, Plaintiff gave Abbott an expert report from Dr. Dana Medlin, a materials engineer and metallurgist.  Shortly after, Plaintiff provided Abbott with a supplemental report from Dr. Medlin.  On July 17, 2015, Abbott served Plaintiff with an expert report from Dr. Thomas Eagar, also a materials engineer and metallurgist.[3]  Upon receipt of Abbott's expert report, Plaintiff complained to Abbott that in forming his opinions, Abbott's expert relied on documents that were provided to Plaintiff for the first time with the expert's  report, and further relied on  documents that had never been provided to Plaintiff.  (#99 at 3, 10-11.)   In response to the complaint from Plaintiff, Abbott provided Plaintiff with an additional 23 pages of discovery.  Abbott claims that these 23 pages are redundant of previously-produced records, but were "salient to Plaintiff's recently-disclosed product defect claims."  (#104 at 15.)  Abbott further argues that their disclosure of the disputed manufacturing and design documents became relevant

_____

[3]The reports can be found at #99 exh. H and I (Medlin) and exh. J (Eagar).

only when Plaintiff "finally disclosed their product defect theory," that is, when Plaintiff handed over his expert's report.  (*Id*. at 16.)

On August 13, 2015, Plaintiff filed this motion for sanctions against Abbott, claiming that Abbott failed to comply with initial disclosure obligations under Fed. R. Civ. P. 26 (a)(1) (A) (ii), and failed to continue to supplement disclosures pursuant to Rule 26(e)(1)(A).  Plaintiff asked for monetary and evidentiary sanctions.  (#98 at 2.)  Plaintiff asserts that not only did Abbott's expert rely on documents that Plaintiff has not seen, in addition, there are important documents relating to the design and manufacture of the product (whether or not Abbott's expert has seen them) that have never been turned over to Plaintiff.  (#113 at 6.)

Abbott argues that its initial disclosures and discovery responses and productions "have been timely and transparent."  (#104 at 2.)   They assert that Plaintiff is trying to remedy flaws in his case, in particular, the fact that his expert report is deficient, by filing the motion for sanctions.  (#104 at 3.)   Abbott states that it did not provide discovery because it did not know the Plaintiff's theory of product defect until it received Plaintiff's expert report; Plaintiff never "followed up" Abbott's disclosures with additional discovery requests; and Plaintiff never made any requests for records specific to his product defect theories until after the close of fact discovery. (#104 at 2.)  Abbott asserts that  Plaintiff knew that "there were potentially additional

records relating to the design or manufacturing of the subject product that they never requested" and Abbott produced documents when it was asked to.[4]   Abbott denies that its expert relied on documents that were not previously provided to Plaintiff. (#104 at 9.) Abbott does *not* deny that there are documents concerning the design and manufacturing of the product that it has never produced.

Abbott points out many problems with Plaintiff's expert report.   Plaintiff's expert tested the wrong wire.  In his supplemental report, he tested the correct wire, but it was the wrong length. (#104 at 6-7.)   Plaintiff's expert relied on a drawing of the wire, provided by Abbott in discovery, that he thought demonstrated that the wire had a relevant design feature called "shoulders," which it does not have.  (*Id*. at 7.) Plaintiff points out that the reason his expert wrongly assumed that the wire had "shoulders" was because he was relying on drawings, produced by Abbott in discovery, that were not "engineering design drawings" but were merely "schematics." (#113 at 6.)  Plaintiff asserts that had he had the discovery to which he was entitled, his expert would be able to write a competent report; Defendant responds that Plaintiff is trumping up this issue as a last-minute effort to salvage a losing case.

III.  Discussion

---

[4]After fact discovery closed, Plaintiff did request additional documents, concerning the "adhesive" used in the manufacturing process, and Abbott provided them.  (#104 at 5.)

Plaintiff correctly points out that Fed. R. Civ. P. 26(a) is an automatic disclosure provision and obligates the parties to disclose all information relevant to its claims or defenses, and 26(e) imposes an obligation to supplement or correct disclosures to reflect accurate information.     (#99 at 12.)   *See The Hip-Saver Company, Inc. v. J.T. Posey Company*, 497 F. Supp. 2d 96, 103 n.5 (D. Mass. 2007). Abbott, for its part, contends that "the onus was on Plaintiffs, not Abbott, to analyze Abbott's discovery responses and production, and then meet and confer with Abbott with regard to any purported deficiencies they perceived in Abbott's responses, or the need to produce further documents." (#104 at 10.)  Abbott admits, for example, that it did not provide Plaintiff with the Design History File of the product, because although Plaintiff "presumably knew it existed," Plaintiff did not explicitly ask for it. (*Id*. at 12.)

Abbott's complaints ring hollow.  For example, Abbott repeatedly insists that it did not provide discovery about the design specifications of the wire because it did not know Plaintiff's theory of how the wire was defective.  (#104 at 16.)  This is absurd.  How could Plaintiff's expert possibly form an opinion about whether or how the wire was defective until *after* considering information about the design of the wire?  And how could the expert look at such information if Abbott had never turned it over?  Further, Abbott admits that it failed to provide information concerning the

design and manufacture of the product and design and manufacturing specifications and drawings, but contends that it did not do so because Plaintiff never specifically asked for such information.  The requests from Plaintiff were not the model of clarity, but Plaintiff did ask for "documents and communications" concerning the wire, "manufacturing specifications" for the wire, "all documents and communications concerning the development, manufacture, and production" of the wire, and Abbott responded to an interrogatory stating that it might use "documents relating to the manufacture and design" of the product at trial.  (#99 at 5-8.)   The Court finds that the requests above give reasonable notice that Plaintiff was asking for documents which Abbott concedes it did not turn over, such as the Design History File.

The fault here, however, is not entirely Abbott's.  Plaintiff bears at least some responsibility for the deficient discovery, and the predicament that it finds itself in at this critical juncture of the case.   One wonders, for instance, given the paucity of discovery here, why Plaintiff did not realize it was missing information and make more specific requests.

## IV. REMEDY

Plaintiff urges that under Rule 37(c)(1) the Court should preclude Abbott from utilizing the newly-produced documents, and also exclude Abbot's expert's testimony at trial.  (#99 at 21.)  In the alternative, Plaintiff proposes that the Court "wind back

the clock," allow time for Abbott to cure its "discovery non-compliance," order the withdrawal of the parties' engineering reports, and in essence, start over with production of expert reports and depositions. (*Id.*)

The Court denies the motions for sanctions and adopts Plaintiff's proposal that he be permitted to request discovery and produce another expert report. Plaintiff is ordered to request discovery from Defendant no later than three business days after the issuance of this Order, by October 14. Defendant will produce the requested discovery by October 21. Expert reports will be due by Plaintiff on October 30 and Abbott on November 10. The parties will have two weeks to depose the experts, to November 24. This Court will hold a status conference on Monday, November 30, to set a schedule for the filing of additional motions, such as revised Daubert or summary judgment motions. In early December, the District Court will set a conference date to schedule trial in January or February. The District Court will rule on what, if any, use may be made at trial of the previous expert reports that have been produced in connection with this case.   SO ORDERED.


/s/ M. Page Kelley
M. Page Kelley
October 8, 2015                          United States Magistrate Judge